UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MITCHELL KEITH GOODRUM,<br><br>    Plaintiff<br><br>v.<br><br>STATE OF NEVADA, et al.,<br><br>    Defendants | Case No.: 3:23-cv-00546-MMD-CSD<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 21 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion to dismiss Plaintiff's amended complaint. (ECF No. 21.) No response was filed by Plaintiff, despite being given several extensions of time.

After a thorough review, it is recommended that Defendants' motion be granted.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*)

The court screened Plaintiff's amended complaint and allowed him to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against John and Jane Doe defendants, who were later identified and substituted as Theodore Parento, Joseph Benson, Lorenzo Villegas, Gaylene Fukagawa, and Christy Coss. (ECF Nos. 9, 13, 20.)

Plaintiff's amended complaint alleges that Defendants failed to abide by a March 16, 2023 settlement agreement. (ECF No. 4 at 2 ¶ 2.) He alleges that he was to be evaluated by an outside specialist to determine his mental state and/or abilities, and that evaluation took place with Dr. Jiang on September 25, 2023, some six months after he entered into the settlement agreement. (*Id*. at 4 ¶¶ 15, 17.) The settlement agreement provided that Plaintiff was to receive medication prescribed by the outside doctor. (*Id*. ¶¶ 16-17.) He claims these medications were delivered to NNCC, and the nurse told him that "some of these medications we don't give inmates." (*Id*. at 4-5 ¶¶ 18-20.) He avers that he was only given one of the medications seven weeks later. (*Id*. ¶ 21.) Plaintiff states the medications must be given as prescribed, and as ordered in the settlement agreement.

Defendants move to dismiss Plaintiff's complaint, arguing: (1) it is barred by res judicata and (2) his claim is actually one for breach of contract which he is barred from bringing against Defendants in federal court. (ECF No. 21.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) contemplates the filing of a motion to dismiss for the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). In reviewing the complaint under this standard, the court must accept as true the allegations of the complaint, *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleadings in the light most favorable to plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). This does not apply, however, to "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). "While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Id*. at 679.

Allegations in pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers, and they must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*); *Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).

Under Federal Rule of Civil Procedure 8(a), "a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The Supreme Court has found that at a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Iqbal*, 556 U.S. at 678.

The complaint need not contain detailed factual allegations, but it must contain more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678. It must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)).

The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "Plausibility" is "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted). Allegations can be deemed "implausible" if there are "obvious alternative explanation[s]" for the facts alleged. *Id*. at 682.

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (dismissed as frivolous); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

## III. DISCUSSION

**A. The Global Settlement**

"A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted); *see also Shaw v. Hahn*, 56 F.3d 1128, 1129 n. 1 (9th Cir. 1995) (taking judicial notice of records to determine preclusive effect of earlier case); *see also U.S. ex. Rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (courts may take notice of proceedings in other courts).

On March 16, 2023, Plaintiff and various NDOC defendants participated in a global settlement conference in cases: 3:20-cv-00173-ART-CSD, 3:20-cv-00549-ART-CLB, 2:21-cv-2164-CSD-BNW, 2:21-cv-2260-ART-VCF, 2:22-cv-218-APG-NJK, 2:22-cv-535-MMD-CSD, and 3:22-cv-00546-MMD-CLB. (*See* ECF No. 80 in case 3:20-cv-00549-ART-CLB.)

The parties reached a settlement, and the terms were stated on the record. Plaintiff signed the settlement agreement and stipulations to dismiss all cases except case 3:20-cv-00549-ART-CLB (the 549 case), which Magistrate Judge Baldwin agreed to monitor for a year to ensure the terms of the settlement agreement were complied with. (*Id*.; ECF No. 21-1 in this case.) A transcript of the settlement conference and agreement were made part of the record in the 549 case. (ECF No. 98 in 3:20-cv-00549-ART-CLB.) In exchange for a full global settlement agreement to resolve and dismiss with prejudice all of these cases, NDOC agreed, among other things, to schedule Plaintiff appointments with outside specialists, including a neurologist, mental health provider, and urologist, and to effectuate any treatment plans recommended by the specialists, including surgery, medical testing, and prescribing of medications, as long as the recommended treatment falls within NDOC guidelines, policies and regulations. (ECF No. 21-1.)

In the June 8, 2023, joint status report in the 549 case, the parties indicated that NNCC was reaching out to mental health providers to secure a contract with a provider who would accept inmate patients to allow Plaintiff to be sent out for an initial consultation and treatment recommendation. (ECF No. 82 in 3:20-cv-00549-ART-CLB.) At the September 14, 2023, status conference, Judge Baldwin gave Defendants 45 days for Plaintiff to see an outside mental health provider, and to file a status report advising the court of the status of the mental health appointment within 30 days. (ECF No. 87 in 3:20-cv-00549-ART-CLB.)

In the status report field on October 10, 2023, in the 549 case, it was noted that Plaintiff was seen by Alliance Mental Health Specialists on September 25, 2023. (ECF No. 88 in 3:20-cv-00549-ART-CLB.) In the December 7, 2023, status report in the 549 case, Plaintiff complained that he did not believe NDOC was following the recommendations from the outside provider, in breach of the settlement agreement. (ECF No. 91 at 2 in 3:20-cv-00549-ART-CLB.) The

Defendants indicated that the consultation report showed the outside mental health provider recommended five medications after a November 6, 2023, appointment, and NDOC had approved and was providing three of the medications. Two of the medications were non-formulary. However, NDOC providers substituted an approved medication for one of the non-formulary recommendations. A copy of the approved medications list for NDOC was provided to Alliance Mental Health, and the providers were working to establish an approved course of medications. (*Id*. at 3.)

In the March 6, 2024, status report in the 549 case, it was represented that Plaintiff was approved for gabapentin and was happy with the mental health services he was receiving. (ECF No. 103 at 2.)

At the March 14, 2024, status conference, Judge Baldwin asked Plaintiff what he believed had not been complied with from the settlement agreement, and Plaintiff had no comment. Plaintiff had filed motions to set aside the settlement agreement, for various reasons, including that NDOC had breached the agreement. Judge Baldwin found on the record, however, that all material terms of the settlement were complied with, including with respect to outside medical appointments and ongoing care provided from mental health professionals, and there was no breach of the agreement. Judge Baldwin ordered the stipulation for dismissal with prejudice be filed, and she advised Plaintiff that he could not continue to litigate in this court related to the global settlement. (ECF No. 106.) The dismissal with prejudice was entered by District Judge Traum on March 15, 2024. (ECF No. 107.)

**B. This Action**

Plaintiff initiated this action on November 7, 2023. Plaintiff specifically alleges that his mental state was examined some six months after he entered into a settlement agreement, and the

6

settlement agreement provided that prison officials had to follow the recommendations of the specialists. Plaintiff contends, however, that they have not done so, as he has not been given certain medications prescribed by the specialist, Dr. Jiang.

**C. Claim for Breach of the Settlement Agreement**

Plaintiff titled his amended complaint in this action: "Amended Complaint to Comply w/ Settlement Agreement." (ECF No. 4 at 1.) To the extent the amended complaint in this action alleges a failure to abide by the settlement agreement because NDOC did not provide Plaintiff with care recommended by an outside mental health specialist, his claim is one for breach of contract.

The global settlement agreement expressly provides that once the actions subject to the agreement were dismissed with prejudice, the federal court no longer had jurisdiction over the cases. (ECF No. 30 at 14; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (courts have ancillary jurisdiction to enforce a settlement if the obligation to comply with the terms is made part of the order of dismissal or the terms of the settlement are incorporated into the order of dismissal.) Here, the court did not retain jurisdiction following the dismissal of those actions with prejudice. Nor were the terms of the settlement incorporated into the dismissal order. If Plaintiff believed there was a breach of the settlement agreement arising from the failure to follow treatment recommendations from the outside mental health specialist, his remedy was to file an action for breach of the settlement agreement in state court.

**D. Issue Preclusion**

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). When dealing with the preclusive effect of a federal court judgment, federal common law

7

applies. *Id*. at 891. It "protects 'against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions. *Id*. (citation omitted).

Issue preclusion provides that a final judgment on the merits of an action precludes the parties from relitigating all issues that were or could have been raised in that action. *Taylor,* 553 U.S. at 882. As the Supreme Court recently put it, "issue preclusion (sometimes called collateral estoppel), … precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Lucky Brand Dungarees, Inc. v. Marcel Fashion Group, Inc.*, 140 S.Ct. 1589, 1594 (2020) (citations omitted). "The party asserting issue preclusion must demonstrate: '(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits.'" *Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017) (quoting *Oyeniran v. Holder*, 672 F.3d 800 806 (9th Cir. 2012)).

Here, the issue of whether NDOC was complying with the terms of the settlement, including providing treatment recommended by an outside mental health specialist was raised in the 549 case during the time period when Magistrate Judge Baldwin was monitoring compliance with the terms of the settlement agreement. The Defendants there specifically addressed Plaintiff's claim that he was not getting the medications prescribed by the mental health specialist. Judge Baldwin specifically asked Plaintiff at the last status conference what he thought was not being complied with, and he had no comment.

Judge Baldwin ultimately concluded there was compliance all of the essential terms of the agreement. As such, the Plaintiff had a full and fair opportunity, in both the status reports and

at the hearing, to litigate this issue, and the issue was actually litigated and resolved in the 549 case. Finally, making a determination that NDOC was complying with the terms of the settlement agreement, including following treatment plans of the outside providers, "became a necessary consequence" of the dismissal of the action with prejudice. In other words, had Judge Baldwin found NDOC was not complying with the specialists' recommendations for treatment, the dismissal would not have been entered. *See Howard*, 871 F.3d at 1044.

Therefore, Plaintiff's Eighth Amendment claim is barred by issue preclusion.

**E. Conclusion**

For the reasons set forth above, Defendants motion to dismiss should be granted. The dismissal should be without prejudice only to the extent that Plaintiff may raise his claim for breach of the settlement agreement, if appropriate, in state court.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion to dismiss and **DISMISSING** this action. The dismissal should be without prejudice only to the extent that Plaintiff may raise his claim for breach of the settlement agreement, if appropriate, in state court.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge. Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: July 23, 2025

_____
Craig S. Denney
United States Magistrate Judge